**THE ATTORNEY GENERAL**

**OF TEXAS**

**AUSTIN 11, TEXAS**

GERALD C. MANN
~~WILL WILSON~~
ATTORNEY GENERAL

Honorable B. T. Walters
County Auditor
Smith County
Tyler, Texas

Dear Sir:

Opinion No. O-3660
Re: What authority is vested in
the County Auditor of Smith
County to install and super-
vise the books and records of
the common schools of the
county?

This will acknowledge receipt of your request for our opinion
on the hereinabove captioned question. We quote from your letter as
follows:

"Please advise what authority is vested in the Auditor
of Smith County to install and supervise the books and
records of the common schools of the county. Art. 1652-
1653, RCS, do not give enough information for me to know
the duties and corresponding authorities of this office in
the fiscal affairs of the common schools.

"The records of the County Superintendent's office are
not sufficient for any auditor to ascertain the correctness
of the vouchers given by the trustees of the common school
districts, except for payment of teachers salaries. In most
case no invoice or other evidence of debt is furnished by
the district when requesting the County Superintendent to
issue voucher in payment of a local bill. Many of these
requisitions are signed by the superintendent of school, or
by one trustee for the entire board. A large number of bills
are paid that run into hundreds of dollars that simply show
on the requisition as "supplies." This prevents a breakdown
of expenditures into 'Janitor Supplies,' 'Class Room Supplies'
etc.

"Most of the Districts are perfectly willing to comply
with any reasonable request. Some do not want to submit
any further evidence to the County Superintendent when
requesting payment of local bills, or bills from the local
funds.

"If it is the duty of the County Auditor to audit
the Common School districts, or the records of the
County Superintendent, please advise if, in your opinion,
the correctness of the vouchers may be determined from
the enclosed papers which, as stated above, comprise
all the evidence to be found in the Superintendent's
office. If not then what steps should be taken to cor-
rect the situation?"

Articles 1652 and 1653, Vernon's Annotated Civil Statutes of
Texas, read as follows:

"Art. 1652. School Ledger -- The auditor shall
install in his office a school ledger showing an
accurate account of all funds received and disbursed by
the common school districts of his county; a bond
register showing all the school bonds issued by the
common school districts of his county, their rate of
interest, date issued and maturity date; and he shall also
keep an interest and sinking fund account of such school
bonds.

"Art. 1653. To examine accounts. -- He shall have
continual access to and shall examine all the books, ac-
counts, reports, vouchers and other records of any officer,
the orders of the commissioners court, relating to finances
of the county, and all vouchers given by the trustee of all
common school districts of the county and shall inquire into
the correctness of same."

In our Opinion Nos. 0-2734 and 0-2734-A, heretofore
rendered by the present administration of this department,
copies of which are enclosed herewith, it was held that it
is mandatory that the county auditor keep the school ledger
mentioned in Article 1652, supra.

In said Opinion No. 0-2734-A, this department held that
the county auditor was entitled to examine all books and
accounts having to do with receipts and disbursements in
common school districts, and to examine all vouchers given
by such trustees. It was there further held that the
details for such examination should be worked out between
the auditor and the respective school boards, since the
statute is silent on the subject. If any other construction
was given Article 1653 it would be impossible for the auditor
to determine the correctness of the vouchers which the
statute requires him to examine for that purpose.

From our examination of the papers enclosed in your
letter, which appear to be the "vouchers" given by the

trustees of the common school district, into the cor-
rectness of which Article 1653 makes it your duty to
inquire, we are inclined to agree with your opinion
that you cannot determine their correctness from the
meager information contained thereon.

As county auditor, you are, of course, not authorized
to pass on the legality of the vouchers given by the
trustees of the common school district, nor to disapprove
them and thereby prevent their payment. Those duties
are given to the county superintendent by Article 2693,
Vernon's Annotated Civil Statutes which provides, in
part, as follows:

"The county superintendent shall approve
all vouchers legally drawn against the
school fund of his county. * * *"

The quoted portion of said statute was construed by
Commission of Appeals of Texas, Section B, in Palmer
Publishing Company vs. Smith, 109 S.W. (2d) 158. In
that case the plaintiff Publishing Company was the holder
of numerous school warrants issued by various common
school districts of Titus County, and alleged to have
been signed by a majority of the trustees of the issuing
district. The county superintendent of public schools
refused to approve these warrants, whereupon a mandamus
suit was filed against him to compel their approval. The
court held that mandamus did not lie since the plaintiff
failed to show that it had first appealed from the super-
intendent's decision to the county board of school trustees
as provided by Article 2686, Vernon's Annotated Civil
Statutes. We quote from the court's opinion as follows:

"The clause 'legally drawn against the school
fund of his county,' as used in article 2693,
supra, undoubtedly confers upon him authority to
decide as to the legality of the form of such
vouchers. If we consider this language in con-
nection with the 'educational set-up' of each
county, we have no doubt it goes further than
this and authorizes an inquiry by him into the
legality of the indebtedness represented by such
voucher. We need inquiry no further than whether
or not he can pass his judgment on any one or more
of the elements which go into the making of a
'legally drawn' voucher, and from such 'decide' its
legality. We think his relation to the school
fund in a limited sense is somewhat analogous to
that of a county auditor with respect to county funds.

"The conclusion that his said act of disapproval
was not a void one follows necessarily from the above."

You state in your letter that "some districts do not
want to submit any further evidence to the county super-
intendent (than the meager statement as shown on the
vouchers enclosed by you) when requesting payment of
local bills, or bills from the local funds."

Under the authorities hereinbefore mentioned the county
superintendent certainly has the authority -- and we think
it is his duty under the facts submitted by you -- to refuse
to approve such vouchers (as submitted by you in your letter)
on the ground that they do not disclose sufficiently detailed
information for him to determine their legality.

Any authority given to boards and officers to draw on
school funds is governed and limited by the provisions of
the general statutes. Vouchers and warrants also should be
approved as provided by law. The manner in which those
powers shall be exercised, are prescribed by statute, and the
course prescribed by law must be followed to the exclusion
of all other methods. 37 Tex. Jur. 968, Section 97.

Like   other public officers, school officers are
responsible for any wrongful or illegal disbursement or
misapplication of school funds. A county superintendent
and his bondsmen have been held liable where the superin-
tendent knowingly and wrongfully approved vouchers drawn
on a fund which could only be appropriated to another
purpose. 37 Tex. Jur. 971, Section 99; Powell v. Mathews
(Civ. App.) 280 S. W.  903.

If the county superintendent would require the trustees
of the common school district to give such detailed informa-
tion in such vouchers as would  appear to be necessary in
order for him to properly determine their legality, as he is
authorized to do to avoid possible liability on his bond,
the county auditor would have no difficulty in determining
their correctness as required of him in Article 1653.

We are of the opinion that the Legislature, in charging
the county superintendent and county auditor with their
respective duties in connection with vouchers given by the
trustees of common school districts, intended that the
superintendent and auditor cooperate in their respective
duties to the end that the school accounts will receive the
highest degree of scrutiny possible.

Trustees of a common school district are also "public
officers" and must subscribe to the oath prescribed in the

Constitution. 37 Tex. Jur. 935, Section 68. Consequently, it is our opinion that such trustees are duty bound, under oaths of office, to cooperate with the county superintendent and the county auditor, and to give to such officers any information concerning such vouchers that may be reasonably necessary for them to discharge their statutory duties.

The Constitution (Article 5, Section 24) and statutes (Articles 5970-5987, V. A. C. S.) give to a district judge power to remove county officers for certain specific causes. Trustees of independent and common school districts, other than those in cities that have assumed control of their schools, are county officers within the meaning of the statutes providing for the removal of county officers. 37 Tex. Jur. 936, Section 68; Kimbrough vs. Barnett, 93 Tex. 301, 55 S.W. 120.

We are of the opinion that a county superintendent, likewise, is a county officer within the meaning of the statutes, supra, providing for the removal of county officers.

In Conference Opinion No. 1824, recorded in Book 50, pages 1-7, rendered by this department on June 27, 1917, to the Honorable H. L. Washburn, County Auditor, Houston, Texas, it was held, at page 6, as follows:

"His (the county auditor's) authority to examine into the correctness of such vouchers to our minds was conferred merely for the purpose of giving him the right to audit such vouchers and if in his judgment the same were unlawfully drawn to report the same to the proper authorities of the county, for such action as might be indicated thereby."

In answer to your question as to what steps should be taken by you to correct the situation as stated in the letter from you, it is the opinion of this department that, under the authorities hereinabove discussed, the following course might aid you in your commendable desire to carry out your official duties.

(1) You should suggest to the county superintendent that you and he, together, work out a form of voucher that will contain all of the information that is needed by each of you for your respective duties.

(2) After a suitable form has been agreed upon the trustees should be advised thereof and their cooperation requested by the county superintendent.

As stated hereinabove, the manner in which such details

are to be worked out is within the discretion of the auditor and cannot be passed upon by this department. We are returning to you herewith the vouchers submitted with your letter.

Trusting that we have fully answered your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By s/Edgar Pfeil
Edgar Pfeil
Assistant

EP:eaw:wc

APPROVED JULY 22, 1941
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By BWB Chairman